**In the Matter of Teresa V. COLEMAN, Debtor.**

No. 00–43747.

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Sept. 24, 2002.

Jesse C. Stone, Swainsboro, GA, for Debtor.

## ORDER DISMISSING CASE

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Confirmation of the above matter was scheduled for July 25, 2002, in Savannah. Virtually all of the secured creditors in the case filed Objections to Confirmation of Debtor's Plan, and the balloting revealed that all the secured creditors voted negatively. The unsecured class, however, voted to accept the plan. At the call of the case, Debtor's counsel requested a sixty (60) day continuance in order to file a modified plan. At that time, the Court informed Debtor's counsel and other parties present that it would withhold a ruling on the Motion to Continue for at least 30 days in order to consider any post-hearing briefs or other submissions. The Court also advised Debtor's counsel that he should operate under the assumption that an Amended Disclosure Statement and Plan needed to be filed with the Court within a 30 day period.

## FINDINGS OF FACT

At the time Debtor filed her case, she owned numerous pieces of rental property in the Savannah and Coastal Georgia area. Under the contracts with the mortgage lenders on those rental properties, she was required to make monthly payments totaling approximately $36,000.00 per month.

Debtor's plan provided for amortizing all secured debt over a thirty-year period at nine percent interest per annum, and for rolling current post-petition arrearages into the principal amount of the new loans. Based on this restructuring of the secured debt, her monthly plan payments would be reduced to approximately $27,000.00 per month.

During the twenty-month period since this case was filed on December 29, 2000, Debtor has made post-petition payments averaging approximately $19,000.00 per month. Some loans were maintained on a current or nearly current basis while others received few if any payments. During the months of January through June of 2002, Debtor's performance improved marginally in that she made mortgage payments averaging approximately $21,000.00 per month. That $21,000.00 figure, however, still fell far short of the payments required by her proposed plan.

The evidence presented by counsel for numerous creditors show there is a vast discrepancy in the proportion of monthly payments made to some creditors as opposed to others. For example, a representative sample of payment histories to creditors who have obtained adequate protection orders from this Court show that since the entry of those orders, none of them has received all of the monthly mortgage payments. The best performance Debtor has managed for this class of creditors is the payment of 12 of 15 monthly mortgage payments, and the worst is only four out of 15 monthly mortgage payments. Debtor has also failed to pay accruing county ad valorem taxes on more than half of these properties. With respect to properties without adequate protection orders, Debtor has maintained current post-petition payments on one loan. Among the remainder, however, Debtor's best monthly payment record is seven of

17, and the worst is an appalling one of 17. The reasons for these discrepancies have not been explained, but it is clear that Debtor has been "robbing Peter to pay Paul" in order to allocate payments to properties where she has felt the most pressure, or faced the threat of foreclosure, or believes that she might have the best equity position should she at some point have to surrender some, but not all, of her rental properties.

As of July 25, the evidence revealed that Debtor's plan was clearly not feasible and thus could not have been confirmed since it would have violated the provisions of 11 U.S.C. § 1129(a)(11). At the hearing, Debtor's counsel requested the Court to grant a continuance of at least 60 days. The basis for his motion was that an outside investor had been located who agreed, in principle, to purchase a 49 percent equity interest in all Debtor's rental properties, contingent on the confirmation of a plan, and had tentatively agreed to pay $1,250,000.00 for that interest. With this influx of new capital, Debtor's counsel believed that Debtor could bring current all post-petition arrearages on all properties and could reduce the principal indebtedness in some manner on the properties Debtor would retain by amortizing the balance at nine percent per year for 30 years, thereby achieving a reduced monthly payment requirement of approximately $20,000.00 per month.

If all of the pieces of the puzzle were to fall into place in accordance with all of Debtor's expectations, it is possible, given the six month performance on mortgage payments of approximately $21,000.00, that Debtor could propose a feasible, confirmable plan. However, as of July 25, no firm commitment had yet been arranged with the potential investor. Both the investor and Debtor had a due diligence obligation to determine the merits of the investment proposal and the feasibility of the investor's ultimate performance. Simultaneously, Debtor had to determine the specific ways in which the dollars received from the possible investment would be allocated among the various creditors, modify the plan, and disseminate it for the creditors' balloting.

With those considerations weighing heavily against granting Debtor's request for a 60 day continuance, I informed Debtor's counsel at the conclusion of the July 25 hearing that, given the dismal performance of Debtor to date, I was not certain whether it would be appropriate to grant the requested continuance for the full 60 days. I announced, however, that I would withhold a ruling on the continuance motion for 30 days and that I would consider any post-hearing submissions. I also advised Debtor's counsel that he should operate under the assumption that an Amended Disclosure Statement and Plan needed to be filed with the Court within a 30 day period.

On August 27, I received a letter from Counsel representing numerous secured creditors outlining the communications between his office and that of Debtor's counsel during the interim period. Debtor had provided a financial statement on the potential investor to opposing counsel, but as of the date of the letter there had not been an opportunity by opposing counsel to conduct any analysis of that statement or any further due diligence inquiry. After Debtor's counsel responded to that letter, I scheduled a status conference for September 19, 2002, to take additional evidence.

At the September 19 status conference, Debtor produced Exhibits 1 and 2 in support of her request for additional time to formulate a plan. Debtor's Exhibit 2 is an equity sharing agreement into which she entered on or about July 24, 2002, with Bayo Olagoke. Under that agreement Mr.

Olagoke would pay a $1,250,000.00 cash infusion to Debtor in order to purchase a 49% equity interest in the real estate which she owns and which is subject to this Chapter 11 proceeding. By the terms of the equity sharing agreement, any transfer of Debtor's interest and Mr. Olagoke's obligation to pay are conditioned upon confirmation of Debtor's plan or an order of this Court "containing such terms and conditions as are satisfactory to the parties herein."

In order to provide this capital infusion, Mr. Olagoke must obtain a loan for that sum of money. He has approached a branch of Regions Bank in the Atlanta metropolitan area for that purpose. Debtor's counsel has been in touch with the banker, and the bank is actively considering Mr. Olagoke's application. His personal financial statements, see Ex. D–1, reveal substantial net worth consisting almost exclusively of real estate and equity investments that are located outside the United States, although he also owns a home with approximately $60,000.00 equity in Fayetteville, Georgia. Regions Bank has conditioned processing Mr. Olagoke's application on the physical transfer of his equity investments from Nigeria to the United States. Although that process is underway, it has not yet been completed. Until those assets are physically located within the United States, there is clearly no net worth which Mr. Olagoke can present to the bank to support a $1.25 million loan secured by assets which the bank could readily reach if there were a default.

Debtor therefore asks for additional time. Debtor asserts that more time is needed (1) to have Mr. Olagoke's assets transferred to the United States for a loan or loan commitment to be obtained from Regions Bank, and (2) to allow Debtor to formulate a recast disclosure statement and plan.

Debtor anticipates that with the $1.25 million, she would bring current all pre and post-petition arrearages to all of the secured lenders who hold mortgages on her real estate and pay the unpaid ad valorem taxes. This would require approximately $500,000.00. She proposes to use the additional $750,000.00 to reduce the principal indebtedness on some or all of the remaining property, and then to reamortize all of her loans over a 30 year period of time at nine percent rate of interest.

The creditors who appeared at the September 19 status conference objected to any further delays in this case. They pointed out that the case has been pending for 20 months and that the progress since the July hearing was not significant, in that the equity sharing agreement has substantial contingencies which make it quite uncertain whether the infusion of capital would occur. They further argued that Debtor's cash position, based on reports filed with the Office of the United States Trustee, reveal substantial cash shortages and losses to the estate totaling over $198,000.00 as of July 31, 2002. See Ex. UST–1.

Debtor filed a skeletal modified plan on September 19, 2002, which contemplates this infusion of capital and provides that Mr. Olagoke would make such payment 30 days after the effective date of the plan, which would be a minimum of 30 days after confirmation. Because Debtor needs additional time to prepare and file a recast disclosure statement and plan, and due to the noticing requirements applicable to the disclosure statement and confirmation hearings, it would be at least 180 days from the date of this Order before any plan could be confirmed and the 30 day period for Mr. Olagoke to perform could expire.

Debtor is obviously unable to fund her obligations to various lenders in accordance with the pre-petition notes and security deeds. She cannot adequately and timely service her obligations under post-petition adequate protection agreements which were made Orders of this Court. She failed to demonstrate at the confirmation hearing the feasibility of the only plan before the Court. In light of these circumstances, which affected this Court's consideration on July 25, and given Debtor's inability since that time to provide unconditional assurance for the injection of outside capital which might make her plan feasible at some point in the future, I conclude that the case should be dismissed.

11 U.S.C. § 1112 provides:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

(4) failure to propose a plan under section 1121 of this title within any time fixed by the court;

(5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan ...

Here, notice of the hearing to consider confirmation of this case included the following language:

The Debtor(s) and its [or his/her] attorney shall appear. In the event they fail to appear, or if the plan is not confirmed at said hearing, a hearing will thereupon be held to determine whether the case should be dismissed or converted to Chapter 7.

Because Debtor's proposed Plan was not confirmable at the July hearing, because this Court has determined that Debtor's progress toward a confirmable plan in the two months intervening has been imperceptible, because Debtor has not demonstrated the ability to avoid continuing losses during the months it would require to confirm a recast plan, because that plan is wholly dependent upon an outside investor who has no binding commitment to participate and who has uncertain prospects for his ability to raise the necessary capital, the case is hereby DISMISSED based on 11 U.S.C. § 1112(b)(1–5) inclusive.